IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TILTED KILT FRANCHISE OPERATING, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 15-cv-10377 ) |
| 1220, LLC, ROBERT BAROUD, EMIL BAROUD, ANTHONY BAROUD and PETER BAROUD, | ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR DECLARATORY JUDGMENT
AND FURTHER RELIEF**

Plaintiff Tilted Kilt Franchise Operating, LLC, by its attorneys, and for its Complaint for Declaratory Judgment and Further Relief against defendants 1220, LLC, Robert Baroud, Emil Baroud, Anthony Baroud and Peter Baroud, states as follows:

**NATURE OF THE ACTION**

1. Plaintiff Tilted Kilt Franchise Operating, LLC ("Tilted Kilt") is the franchisor of the nationwide chain of franchised Tilted Kilted Pub & Eatery® restaurants. In various parts of the country Tilted Kilt is represented both in terms of the development of new restaurants and the ongoing support of existing restaurants by area developers who operate under written area developer agreements. Consistent with the heavy regulation of franchise offerings at both the state and federal levels, these area developer agreements specifically contain the following, among other, pertinent provisions:

"The [area developer] acknowledges being advised that many jurisdictions have enacted laws concerning the advertising, sale, renewal, termination and continuing relationship between parties to a franchise agreement, including, without

--1--

limitation, laws concerning disclosure requirements. The [area developer] agrees promptly to become aware of, *and to comply with*, all such laws and legal requirements in force in the Area Developer Area and to utilize only [franchise disclosure documents] that [Tilted Kilt] has approved for use in the applicable jurisdiction." (Emphasis supplied).

2. In 2007, defendant 1220, LLC—an Illinois limited liability company owned in equal parts by four brothers, defendants Robert Baroud, Emil Baroud, Anthony Baroud and Peter Baroud ("the Barouds")—became a Tilted Kilt area developer. Since that time and on numerous occasions, Tilted Kilt has provided 1220, LLC and the Barouds (and all other area developers) in-depth training concerning the laws and regulations governing the offer and sale of franchises in Illinois (and elsewhere). These training sessions were delivered by experienced franchise counsel retained by Tilted Kilt for that purpose.

3. Despite its contractual commitments (and those of the Barouds' as guarantors of 1220, LLC's obligations under its area developer agreement) and the extensive training Tilted Kilt has provided to it, 1220, LLC, in its capacity as a Tilted Kilt area developer, has repeatedly violated both state and federal law in connection with the offer and sale of Tilted Kilt franchises within its area developer territory by, among other things, making unlawful financial performance representations to prospective Tilted Kilt franchisees for the purpose of inducing such prospects' purchase of a Tilted Kilt franchise, all in order to collect part of the development fee and ongoing royalties paid by the franchisee.

4. 1220, LLC's and the Barouds' unlawful misconduct not only violated state and federal law by deceiving and defrauding prospective Tilted Kilt franchisees (and setting them up for certain failure), it has as well exposed Tilted Kilt as the franchisor to substantial liabilities, including, among other things, potential federal and state civil enforcement actions and criminal prosecutions, adverse disclosure obligations negatively and materially impacting its efforts to

grow the brand, civil actions for rescission or damages, and refunds or compromised claims, all of which has materially and irreparably damaged Tilted Kilt's business, reputation and goodwill, and standing within the highly competitive franchise industry wherein a system's reputation for integrity is critical to that system's success in the franchise marketplace.

5. 1220, LLC's violation of state and federal laws and regulations governing the offer and sale of franchises constitutes a material breach of its area developer agreement warranting the agreement's immediate termination for cause. And because the nature of that material breach undermines the fundamental trust Tilted Kilt placed in 1220, LLC (and in the Barouds as its guarantors) to represent Tilted Kilt with integrity and in compliance with applicable franchise disclosure laws, 1220, LLC's and the Barouds' breaches cannot be cured.

6. By this action, Tilted Kilt asks the Court to declare that it may terminate the area developer agreement for cause, consistent with the agreement's terms and applicable state law. In addition, Tilted Kilt asks that the Court enter further relief consistent with the declaratory judgment sought, including (i) an award of the damages Tilted Kilt has already sustained by reason of 1220, LLC's and the Barouds' misconduct, jointly and severally, (ii) liquidated damages as provided for in the area developer agreement, (iii) a declaration that any and all rights of 1220, LLC and the Barouds under the area developer agreement are extinguished, and (iv) an award of the attorneys' fees and costs Tilted Kilt has incurred in connection with its investigation of the misconduct giving rise to this action and herein, as provided for in the area developer agreement.

## THE PARTIES

7. Tilted Kilt is a Wyoming limited liability company headquartered in Tempe, Arizona. None of Tilted Kilt's members is a citizen or resident of Illinois.

8. 1220, LLC is an Illinois limited liability company headquartered in Arlington Heights, Illinois. Each of its members, Robert Baroud, Emil Baroud, Anthony Baroud and Peter Baroud, is a citizen and resident of Illinois.

## JURISDICTION AND VENUE

9. The Court has original subject matter jurisdiction of this action under 28 U.S.C. § 1332(a)(1), in that this is a civil action between citizens of different States where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10. Venue is proper in this judicial district under 28 U.S.C. 1391(b)(1) and (2) because all defendants reside in this judicial district and a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this judicial district.

## RELEVANT BACKGROUND FACTS

### The Parties' Area Developer Agreement

11. On July 30, 2007, Tilted Kilt, as franchisor, and 1220, LLC, as area developer, entered into a written Tilted Kilt Franchise Operating, LLC Area Developer Agreement by which Tilted Kilt appointed 1220, LLC as its area developer for a territory comprised of certain counties located in Northern Illinois, Southern Wisconsin and Northwest Indiana, for an initial twenty-five year term.

12. As area developer, 1220, LLC's responsibilities included (i) soliciting and referring to Tilted Kilt for its consideration qualified prospective Tilted Kilt franchisees, (ii) performing site acquisition services for restaurants located within its area developer territory, and (iii) providing opening and ongoing operational support to Tilted Kilt franchisees within its territory.

13. With respect to its solicitation of prospective Tilted Kilt franchisees, 1220, LLC's area developer agreement contained the following acknowledgement and commitments:

> **13.2. Compliance with Laws and Good Business Practices.**
>
> The AD shall secure and maintain in force all required licenses, permits and certificates relating to the AD's activities hereunder and shall operate in full compliance with all applicable laws, ordinances and regulations. The AD acknowledges being advised that many jurisdictions have enacted laws concerning the advertising, sale, renewal, termination and continuing relationship between parties to a franchise agreement, including without limitation, laws concerning disclosure requirements. The AD agrees promptly to become aware of, and to comply with, all such laws and legal requirements in force in the Area Developer Area and to utilize only offering circulars that the Franchisor has approved for use in the applicable jurisdiction.

14. Under the area developer agreement's express terms, Tilted Kilt may terminate the agreement in the event 1220, LLC or any of its members "engages in any conduct which may adversely affect the reputation of TILTED KILT Restaurants or the goodwill associated with" Tilted Kilt's trade or service marks, or otherwise "[f]ails to comply with any other provision of [the area developer agreement] or any mandatory specification, standard or operating procedure prescribed by" Tilted Kilt.

### 1220, LLC's and the Barouds' Illegal Financial Performance Representations

15. Both federal and certain state laws—specifically the Federal Trade Commission's Rule on Franchising, the Illinois Franchise Disclosure Act, and the Wisconsin Franchise Investment Law—prohibit making financial performance representations in connection with the offer or sale of a franchise, except within Item 19 of a franchise disclosure document prepared in the manner prescribed by that rule or law and the guidelines and regulations promulgated pursuant to them. Simply stated, and among other things, it is a violation of federal, Illinois and Wisconsin law for a franchisor or its agent, in this case 1220, LLC or any of its members, to provide a prospective franchisee with a financial performance representation—such as financial projections relative to a prospective franchise or a proposed location—in connection with the offer or sale of a franchise.

16. In 2009, Michael Roscioli and Chris Gochis submitted an online application to become Tilted Kilt franchisees. Based on their geographic location within 1220, LLC's development area, Tilted Kilt referred Roscioli and Gochis to 1220, LLC.

17. In July 2009, Emil Baroud and Robert Baroud met with Roscioli and Gochis at the Bull & Bear Tavern in Kenosha, Wisconsin. At that meeting Emil Baroud explained to Roscioli and Gochis Tilted Kilt's process for evaluating and qualifying persons interested in becoming Tilted Kilt franchisees. Emil Baroud told Roscioli and Gochis at that meeting that franchised Tilted Kilt restaurants generated average annual revenues of $2.5 million, which was false. Robert Baroud stated that annual gross sales at the Tilted Kilt restaurant in Woodridge, Illinois were $3.5 million, which also was false. The Barouds also steered Roscioli and Gochis to a highly successful Tilted Kilt franchisee, telling them that they should talk with John Bobak about sales at his franchised restaurant. At the time sales at Bobak's restaurant were among the highest in the Tilted Kilt system. Emil Baroud's and Robert Baroud's false representations concerning sales of particular franchised Tilted Kilt restaurants were unlawful financial performance representations not contained in Item 19 of Tilted Kilt's then-current franchise disclosure document. Their direction that Roscioli and Gochis speak with John Bobak constituted illegal "steering" of a prospective franchisee.

18. On November 11, 2009, after completing their due diligence and in reliance on the misrepresentations made to them by Emil and Robert Baroud, Roscioli and Gochis entered into a franchise agreement to establish a franchised Tilted Kilt restaurant in Kenosha, Wisconsin.

19. Roscioli and Gochis then met with Emil and Robert Baroud to discuss site selection. During that discussion Emil Baroud told Roscioli and Gochis that several available sites in Kenosha, Wisconsin could generate annual revenues in excess of $3 million. That

misrepresentation also was not contained in Item 19 of Tilted Kilt's then-current franchise disclosure document.

20. Before their franchised Tilted Kilt restaurant in Kenosha, Wisconsin had even opened, Roscioli and Gochis learned that the Max & Erma's restaurant in Vernon Hills, Illinois had closed. Roscioli asked Emil Baroud if that site would be a good location for a Tilted Kilt restaurant. In response, Emil Baroud prepared and sent to Roscioli a demographic and traffic study containing data and statistics that were better even than for the Kenosha, Wisconsin location that Emil Baroud has represented could generate over $3 million in annual revenues.

21. Based on their due diligence, including the demographic and traffic study the Barouds prepared, Roscioli and Gochis on July 6, 2010 entered into a second Tilted Kilt franchise agreement to establish a restaurant in Vernon Hills, Illinois.

22. Roscioli's and Gochis' franchised Tilted Kilt restaurant in Vernon Hills, Illinois opened on September 6, 2011. Anthony Baroud visited that location from time to time, ostensibly to perform audits in his capacity as area developer. During one such visit, Anthony Baroud told Roscioli that the Tilted Kilt franchisee in Gurnee, Illinois was "sitting on" that territory and encouraged Roscioli and Gochis to buy the territory and open a Tilted Kilt restaurant there.

23. Roscioli asked Anthony Baroud what he thought sales might be at a Titled Kilt restaurant in Gurnee, Illinois. In response, Anthony Baroud prepared and sent to Gochis via email a projection of revenues and expenses for a Tilted Kilt restaurant in Gurnee, Illinois or Kenosha, Wisconsin. None of the financial projections, assumptions or representations set forth in the document was included in Item 19 of Tilted Kilt's then-current franchise disclosure document.

24. A week after they received Anthony Baroud's projection, Roscioli and Gochis met with Anthony Baroud at Gurnee Mills in Gurnee, Illinois to discuss the possibility of their acquiring the franchise rights for Gurnee, Illinois. At that meeting Anthony Baroud told Roscioli and Gochis that a franchised Tilted Kilt restaurant in Gurnee Mills would generate between $3 and $5 million in annual sales and would have "no problem" meeting the projection Baroud had prepared and provided to Roscioli and Gochis.

25. Several weeks later, Roscioli and Gochis met with their other investors to consider acquiring the Tilted Kilt franchise rights to Gurnee, Illinois. Anthony Baroud attended the meeting and presented his projection to the group of investors. Based on that presentation the group negotiated for and, on December 14, 2012, acquired, the Tilted Kilt franchise rights to Gurnee, Illinois from the existing franchisee.

26. Roscioli also used the projection Anthony Baroud prepared in evaluating a site for the Tilted Kilt restaurant in Kenosha, Wisconsin. Roscioli's analysis of the site focused on, among other things, the fact that the rent the landlord was asking for the site was less than the rent projected in Anthony Baroud's projection.

27. Roscioli discussed his analysis with Anthony Baroud. Anthony Baroud told Roscioli that he expected annual sales at the Kenosha, Wisconsin to be at least $2.5 million, and that even if sales were as low as $2 million the restaurant would be profitable because of what he stated would be lower rent and labor costs than were disclosed in the projection he had prepared.

28. Roscioli discussed several other sites in Kenosha, Wisconsin with Anthony Baroud as well. In each instance Anthony Baroud told Roscioli that the site was "great" and that a Tilted Kilt restaurant at the location would generate annual sales of between $2.5 and $3.5 million.

29. The Tilted Kilt restaurant in Kenosha, Wisconsin opened on March 25, 2013. It never performed financially at the levels Anthony Baroud projected, and sustained significant losses rather than the profits Baroud projected.

**Tilted Kilt's Discovery of Defendants' Misconduct**

30. On May 11, 2015, Tilted Kilt first learned of the unlawful projection provided to Roscioli and Gochis by Anthony Baroud when Roscioli's and Gochis' lawyer wrote to Tilted Kilt informing it of the projection, and demanding both a refund of the fees Roscioli and Gochis had paid Tilted Kilt to acquire their franchises and a release of their obligations under their Kenosha, Illinois franchise agreement.

31. From subsequent interviews of Roscioli and Gochis, Tilted Kilt learned of the other unlawful financial performance representations made by 1220, LLC and Emil, Robert and Anthony Baroud set forth above.

32. When Tilted Kilt informed Anthony Baroud of what Roscioli's and Gochis' lawyer had claimed, Baroud responded that "1220.llc (sic) did not make any unlawful FPR's to this franchisee." When Tilted Kilt shared with Baroud the email by which he had transmitted to projection to Gochis, Baroud turned the matter over to his lawyer, who in turn claimed that the projection had been filled in after Baroud sent it by someone other than 1220, LLC or the Barouds. However, it has been forensically determined that Baroud's lawyer's claim is false, and that all cells of the projection had in fact been completed before the projection was emailed by Anthony Baroud to Gochis.

## COUNT I
## DECLARATORY JUDGMENT

33. Tilted Kilt repeats and realleges ¶¶ 1 through 32 of its Complaint for Declaratory Judgment and Further Relief as and for this ¶ 33, as if fully set forth herein.

34. An actual and justiciable controversy exists between Tilted Kilt and defendants concerning Tilted Kilt's right to terminate for cause the area developer agreement, consistent with the agreement's terms and applicable state law, based on defendants' having made unlawful financial performance representations to prospective Tilted Kilt franchisees in violation of the Illinois Franchise Disclosure Act, the Wisconsin Franchise Investment Law, and the Federal Trade Commission's Rule on Franchising and the regulations and guidelines promulgated pursuant to those laws and rules.

35. Under 28 U.S.C. § 2201, the Court may declare the rights and legal relations of Tilted Kilt and defendants under the area developer agreement (and each of the Barouds' guaranty of 1220, LLC's obligations under the agreement).

36. Defendants committed material breaches of the area developer agreement and in so doing violated state and federal law regulating the offer and sale of franchises within the United States, Illinois and Wisconsin, thereby exposing Tilted Kilt to substantial liabilities, including potential federal and state civil enforcement actions and criminal prosecution, adverse disclosure obligations that will negatively and materially impacting Tilted Kilt's efforts to grow its brand, civil actions for damages and rescission, and refunds or compromised claims, all of which has materially and irreparably damaged Tilted Kilt's business, reputation and goodwill, and standing within the highly competitive franchise industry wherein a system's reputation for integrity is critical to it's that system's success in the franchise marketplace.

37. Tilted Kilt is entitled to a declaratory judgment that (i) it is entitled to terminate the area developer agreement based on defendants' illegal actions and material breaches of the area developer agreement, (ii) defendants are not entitled to any "cure" period since their material breaches are incurable, and (iii) any and all of defendants' rights or entitlements under the area developer agreement are extinguished.

## COUNT II
## FURTHER RELIEF

38. Tilted Kilt repeats and realleges ¶¶ 1 through 37 of its Complaint for Declaratory Judgment and Further Relief as and for this ¶ 38, as if fully set forth herein.

39. Under 28 U.S.C. § 2202, the Court may grant Tilted Kilt further necessary or proper relief consistent with the declaratory judgment Tilted Kilt seeks.

40. Tilted Kilt is entitled to further relief, including, among other things, (i) an award of the damages Tilted Kilt has already sustained by reason of 1220, LLC's and the Barouds' misconduct, jointly and severally, (ii) liquidated damages as provided for in the area developer agreement, (iii) indemnification by 1220, LLC under the area developer agreement and from each of the Barouds under their guaranty for any loss or damages it sustained or will sustain by reason of any unlawful financial performance representation made by any of them, including, without limitation, the lost revenue it has sustained by reason the closure of Roscioli's and Gochis' franchises, the amounts it has lost whether in the form of refunds, payments, or compromised claims, and the attorneys' fees and costs it has and will incur both in connection with its ongoing investigation of defendants' misconduct in relation to Roscioli and Gochis and other franchisees, and (iv) an award of the attorneys' fees and costs incurred in connection with this action as provided for in the area developer agreement.

**WHEREFORE**, plaintiff Tilted Kilt Franchise Operating, LLC asks the Court for (A) entry of a declaratory judgment declaring that (i) it is entitled to terminate the area developer agreement based on defendants' illegal actions and material breaches of the area developer agreement, (ii) defendants are not entitled to any "cure" period since their material breaches are incurable, and (iii) any and all of defendants' rights or entitlements under the area developer agreement are extinguished; and (B) further necessary or proper relief, including, among other things, (i) an award of the damages Tilted Kilt has already sustained by reason of 1220, LLC's and the Barouds' misconduct, jointly and severally, (ii) liquidated damages as provided for in the area developer agreement, (iii) indemnification by 1220, LLC under the area developer agreement and from each of the Barouds under their guaranty for any loss or damages it sustained or will sustain by reason of any unlawful financial performance representation made by any of them, including, without limitation, the lost revenue it has sustained by reason the closure of Roscioli's and Gochis' franchises, the amounts it has lost whether in the form of refunds, payments, or compromised claims, and the attorneys' fees and costs it has and will incur both in connection with its investigation of defendants' misconduct in relation to Roscioli and Gochis and other franchisees, and (iv) an award of the attorneys' fees and costs incurred in connection with this action as provided for in the area developer agreement.

**TILTED KILT FRANCHISE OPERATING, LLC**

By: s/Fredric A. Cohen
One of its Attorneys

Fredric A. Cohen (ARDC #6198606)
**CHENG COHEN LLC**
311 N. Aberdeen Street, Suite 400
Chicago, IL 60607
Telephone: (312) 243-1717
E-mail: fredric.cohen@chengcohen.com