# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TILTED KILT FRANCHISE OPERATING, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 15-cv-10377 ) ) Judge Joan B. Gottschall |
| 1220, LLC, ROBERT BAROUD, EMIL BAROUD, ANTHONY BAROUD and PETER BAROUD, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION & ORDER

Plaintiff Titled Kilt Franchise Operating, LLC ("Tilted Kilt") filed a two-count complaint against 1220, LLC ("1220"), Robert Baroud, Emil Baroud, Anthony Baroud, and Peter Baroud (collectively, "Defendants") seeking declaratory judgment and further relief consistent with the declaratory judgment that Tilted Kilt seeks. Tilted Kilt contends that Defendants breached their developer agreement in a material and non-curable way pursuant to the Federal Trade Commission's Rule on Franchising, the Illinois Franchise Disclosure Act, and the Wisconsin Franchise Investment Law, justifying Tilted Kilt in terminating the developer agreement. Tilted Kilt seeks a declaratory judgment stating that Defendants' conduct violated the terms of the developer agreement and constituted good cause for termination and that Tilted Kilt is justified in terminating the developer agreement without providing Defendants a "cure" period. Currently before the court are Defendants' motion to dismiss Tilted Kilt's complaint, Defendants' motion to consolidate, and Tilted Kilt's motion to dismiss Defendants' counterclaims.

## II. BACKGROUND[1]

Tilted Kilt is the franchisor of a nationwide chain of restaurants bearing the same name. Defendant 1220 is an Illinois limited liability company owned in equal parts by four brothers—Robert Baroud ("Robert"), Emil Baroud ("Emil"), Anthony Baround ("Anthony"), and Peter Baroud ("Peter") (collectively "Barouds"). In 2007, 1220 became a Tilted Kilt area developer. 1220 was granted development rights for a territory comprised of certain counties in Illinois, Wisconsin, and Indiana for a period of twenty-five years ("AD Agreement"). As an area developer, 1220 is responsible for the following: (1) soliciting and referring to Tilted Kilt for its consideration qualified prospective franchisees; (2) performing site acquisition services for restaurants located within its territory; and (3) providing opening and ongoing operational support to Tilted Kilt franchises within its territory. According to the AD Agreement, Robert, Emil, Anthony, and Peter each personally guaranteed all of 1220's obligations.

The AD Agreement between Tilted Kilt and Defendants contained the following provisions:

> **13.2. Compliance with Laws and Good Business Practices.**
>
> [Defendants] shall secure and maintain in force all required licenses, permits and certificates relating to the [Defendants'] activities hereunder and shall operate in full compliance with all applicable laws, ordinances and regulations. [Defendants] acknowledge[ ] being advised that many jurisdictions have enacted laws concerning the advertising, sale, renewal, termination and continuing relationship between parties to a franchise agreement, including without limitation, laws concerning disclosure requirements. [Defendants] agree[ ] promptly to become aware of, and to comply with, all such laws and legal requirements in force in the Area Developer Area and to utilize only offering circulars that [Tilted Kilt] has approved for use in the applicable jurisdiction.

[Memo. in Support of Defs. Mot. to Dismiss, Ex. 1, AD Agreement, p. 17, ECF No. 7.]

> **13.6. Conflicting Interests.**

---

[1] The facts in this section are taken from Tilted Kilt's complaint and are presumed to be true for the purpose of resolving the motion to dismiss. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

> [Defendants] shall at all times faithfully, honestly and diligently perform its obligations hereunder and continuously exert its best efforts to promote, enhance and service TILTED KILT Restaurants in [Defendants'] Area. Except for [Defendants'] operation of a TILTED KILT Restaurant, [Defendants] shall not engage in any other business or other activity, directly or indirectly, that requires any significant management responsibility, time commitments, or otherwise may conflict with the [Defendants'] obligations hereunder, without the prior written approval of [Tilted Kilt].

[Memo. in Support of Defs. Mot. to Dismiss, Ex. 1, AD Agreement, p. 18, ECF No. 7.]

In addition to the above-cited sections of the AD Agreement, Defendants also agreed that before any offer or sale of a franchise, they would "take reasonable steps to confirm that the information contained in any written materials, agreements and other documents related to the offer or sale of franchises is true, correct and not misleading at the time of such offer or sale, and the offer of sale of such franchise will not at that time be contrary to or in any violation of any applicable state law related to the registration of the franchise offering." [Memo. in Support of Defs. Mot. to Dismiss, Ex. 1, AD Agreement, p. 17, ECF No. 7.]

Tilted Kilt alleges that Defendants repeatedly breached these provisions of the AD Agreement from July 2009 until December 2012 by making misleading financial performance representations to prospective franchisees, Chris Gochis ("Gochis") and Michael Roscioli ("Roscioli") in connection with the offer or sale of a franchise. More specifically, Tilted Kilt alleges that Defendants told Gochis and Roscioli that "franchised Titled Kilt restaurants generated average annual revenues of $2.5 million" [Compl. ¶ 17, ECF No. 1.], "annual gross sales at the Tilted Kilt restaurant in Woodridge, Illinois were $3.5 million" [*Id.*], and "a franchised Tilted Kilt restaurant in Gurnee Mills would generate between $3 and $5 million in annual sales and would have 'no problem' meeting the projection [the] Baroud[s] had prepared and provided to Roscioli and Gochis." [*Id.* ¶ 24.] Tilted Kilt argues that each of these

3

statements made to Riscioli and Gochis was false and misleading when made and not contained in Tilted Kilt's then-current franchise disclosure document. Not only did the statements violate the AD Agreement with Tilted Kilt, they violated federal and state laws and they adversely affected the reputation and goodwill of Tilted Kilt.

Tilted Kilt also alleges that Defendants breached the AD Agreement and violated state and federal laws by preparing a misleading projection of revenue and expenses for a Tilted Kilt restaurant which was not contained in Item 19 of Tilted Kilt's then-current franchise disclosure document and delivering it to prospective franchisees, Roscioli and Gochis. [Compl. ¶¶ 15, 23, ECF No. 1.]; *see also* 815 Ill. Comp. Stat. 705/16; Wis. Stat. § 553.41; 16 CFR § 436.9.

Based on these representations by Defendants, Roscioli and Gochis entered into agreements to establish franchised Tilted Kilt restaurants in the following locations: (1) Kenosha, Wisconsin in November 2009 [Compl. ¶ 18, ECF No. 1.]; (2) Vernon Hills, Illinois in July 2010 [*Id.* ¶ 21]; and (3) Gurnee, Illinois in December 2012 [*Id.* ¶ 25.] The Tilted Kilt in Kenosha did not open until March 25, 2013 and never performed financially at the levels that Defendants projected and instead sustained significant losses rather than the profits projected. [*Id.* ¶ 29.]

Tilted Kilt states that it first learned of these allegedly misleading financial representations provided to Riscioli and Gochis by Defendants on May 11, 2015, when an attorney for Roscioli and Gochis wrote to Tilted Kilt informing it of the misrepresentations and demanding both a refund of the fees paid to Tilted Kilt by Roscioli and Gochis to acquire their franchises and a release of their obligations under the franchise agreement. [*Id.* ¶ 30.]

Section 17.2 of the AD Agreement provides that Tilted Kilt can terminate the agreement if Defendants fail "to comply with any [ ] provision of this [AD] Agreement" or "engage[ ] in any conduct which may adversely affect the reputation of [Tilted Kilt] [r]estaurants or the

goodwill associated with the [Tilted Kilt] [m]arks[.]" [Memo. in Support of Defs. Mot. to Dismiss, Ex. 1, AD Agreement, pp. 24-25, ECF No. 7.] Pursuant to § 17.2 of the AD Agreement, Tilted Kilt now seeks a declaratory judgment that it is entitled to terminate the AD Agreement without providing Defendants with an opportunity to cure because it alleges that any cure period would be futile.

Defendants, in turn, filed the instant motion to dismiss, arguing that Tilted Kilt's complaint should be dismissed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) as this court lacks subject matter jurisdiction because Tilted Kilt has failed to plead any monetary damages or injury. Alternatively, Defendants argue that the complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim due to the following: (1) Tilted Kilt's declaratory judgment action is improper and should be brought as a breach of contract claim; and (2) the relief sought by Tilted Kilt is improper according to § 17.2 of the AD Agreement and § 19 of the Illinois Franchise Disclosure Act. Both provisions require notice of termination and an opportunity to cure before a franchise can be terminated.

In addition to filing their motion to dismiss Tilted Kilt's complaint, Defendants filed a four-count counterclaim against Tilted Kilt sounding in breach of contract (Count I), seeking declaratory relief (Count II), seeking injunction relief (Count III) and alleging a violation of the Illinois Franchise Disclosure Act (Count IV). [Counterclaim, ECF No. 8.] The counterclaim arises from the same set of facts as the claims made by Tilted Kilt in its complaint. Unsure of whether a counterclaim could stand on its own, Defendants filed an independent complaint alleging the same exact cause of action as the counterclaim in the present case. *See 1220, LLC v. Tilted Kilt Franchise Operating, LLC*, No. 16 C 744 (Tharp, J.). Because of the relatedness of

the two cases, Defendants have filed a motion to consolidate the case in front of Judge Tharp with the instant matter.

### III. LEGAL STANDARD

Rule 12(b)(1) requires dismissal of a lawsuit if the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). In this procedural context, the court generally accepts all well-pleaded allegations from the complaint as true and draws all reasonable inferences in the plaintiff's favor. *See Franzoni v. Hartmax Corp.*, 300 F.3d 767, 771 (7th Cir. 2002). However, a court ruling on a motion to dismiss under Rule 12(b)(1) also "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993). Because "[j]urisdiction is the 'power to declare law,'" a district court may not proceed in its absence. *Hay v. Ind. State Bd. of Tax Com'rs*, 312 F.3d 876, 879 (7th Cir. 2002) (citing *Ruhrgas v. Marathon Oil Co.*, 526 U.S. 574, 577, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. For the purposes of a motion to dismiss, the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich*, 664 F.3d at 212. In deciding a Rule 12(b)(6) motion, the court

6

may consider documents attached to a complaint, such as contract documents. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015).

## IV. DISCUSSION

### A. Amount in Controversy

Federal courts are courts of limited jurisdiction and may exercise jurisdiction only over matters authorized by the Constitution and by federal statute. *Int'l Union of Operating Eng'rs, Local 150, AFL–CIO v. Ward*, 563 F.3d 276, 280 (7th Cir. 2009). Consequently, federal courts must scrupulously police the boundaries of their own jurisdiction. Even where there is no objection by a party to challenge jurisdiction, they are "obliged to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction." *Tylka v. Gerber Prods. Co.*, 211 F.3d 445, 448 (7th Cir. 2000) (quoting *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 278, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

A party asserting federal jurisdiction under 28 U.S.C. § 1332 must establish both diversity of citizenship and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a). When challenged, the party seeking federal jurisdiction must prove these statutory requirements by a preponderance of the evidence. *See Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir.2011). Proving the necessary "amount in controversy" requires a good faith showing that supports the party's "estimate of its exposure or potential maximum loss." *Hart v. ConAgra Foods, Inc.*, No. 1:07–cv–0395–JDT–WTL, 2007 WL 2286131, at * 1 (S.D.Ind. Aug.7, 2007). The proponent's "goal is to determine the cost or value of complying with [his] demands, from either party's perspective." *Id.* (citing *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 542 (7th Cir.2006)).

Here, Defendants claim that they have challenged Tilted Kilt's allegation of the amount in controversy, thus placing the burden on Tilted Kilt to support its assertion with "competent proof." However, Defendants' "challenge" amounts to nothing more than an assertion that Tilted Kilt has not properly pled monetary damages that would exceed $75,000. This is quite different from arguing that Tilted Kilt *cannot* prove a set of facts in which it would recover over $75,000. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540 (7th Cir. 2006) ("What the proponent of jurisdiction must 'prove' is contested factual assertions[.]") Defendants have not contested Tilted Kilt's factual assertion; rather, they challenge whether Tilted Kilt's assertion is enough. The sum claimed by the proponent of federal jurisdiction controls if the claim is apparently made in good faith. *Id.* at 541. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. *Id.* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)). Whether damages will exceed $75,000 is not a fact but a prediction, and with respect to that subject the court must decide whether "to a legal certainty…the claim is really for less than the jurisdictional amount." *Id.*

Tilted Kilt has alleged that Defendants' conduct has exposed Tilted Kilt to substantial liabilities, including potential federal and state civil enforcement actions and criminal prosecution, civil actions for damages and rescission, as well as irreparable damage to Tilted Kilt's business, reputation and goodwill. Because Defendants have not contested any material facts in Tilted Kilt's complaint relating to the amount in controversy and because it is not "legally certain" that recovery from Tilted Kilt's perspective or the cost of complying with the judgment from Defendants' perspective will be less than the jurisdictional floor, the court finds that the amount in controversy requirement has been satisfied.

### B. Failure to State a Claim Pursuant to Rule 12(b)(6)

Defendants argue that Tilted Kilt's complaint fails to state actionable claims on which relief can be granted for two reasons: (1) Tilted Kilt's claim that it should be allowed to terminate the AD Agreement with Defendants is contradicted by § 17.2 of the AD Agreement and Section 19 of the Illinois Franchise Disclosure Act, which provides that termination of the agreement or franchise is improper unless Tilted Kilt provides Defendants with notice and an opportunity to cure; and (2) Twisted Kilt's claim has been improperly brought as a declaratory judgment action when it should have been brought as a breach of contract claim. The court will address each of these claims in reverse order.

#### i. Declaratory Judgment

The Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA") provides that in a case of an "actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration ..." 28 U.S.C. § 2201(a). As a threshold issue, DJA actions are justiciable only if they satisfy the "actual controversy" statutory requirement. See 28 U.S.C. 2201(a). This prerequisite is coextensive with the "case or controversy" standard for determining standing. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007); *Public Service Comm. of Utah v. Wycoff*, 344 U.S. 237, 241–42, 73 S.Ct. 236, 97 L.Ed. 291 (1952). While the contours of case or controversy under the DJA are not always clearly defined, the dispute must be "real and substantial" and "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune*, 549 U.S. at 127 (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937)). "Basically, the question in each case

is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (citing *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)).

Defendants claim that Tilted Kilt has failed to plead an "actual controversy" as is necessary to proceed under the DJA. As noted, a declaratory judgment claim presents an "actual controversy" if "there is a substantial controversy" between the parties; "uncertain or speculative business injury…will not support a finding that an actual controversy exists." *Nuclear Engineering Co. v. Scott*, 660 F.2d 241, 252 (7th Cir. 1981). Here, Tilted Kilt has pleaded an actual controversy. Tilted Kilt has alleged that Defendants breached the AD Agreement. As a result of the alleged breach, an attorney for Roscioli and Gochis sent a letter to Tilted Kilt demanding both a refund of the fees paid to Tilted Kilt to acquire the franchise and also a release of their obligations under their franchise agreement with Tilted Kilt.

Defendants' claim that Tilted Kilt's action should have been brought as a breach of contract instead of a declaratory judgment action is also unavailing. Although Tilted Kilt alleges that Defendants breached the AD Agreement, the remedy it seeks is a declaration that it may terminate the contract without giving Defendants any opportunity to cure. Having the court find that Defendants breached the contract would not provide any clarity as to whether Tilted Kilt would be entitled to terminate the contract without an opportunity to cure. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 711 (7th Cir. 2002) ("Declaratory judgment actions serve an important role in our legal system insofar as they permit prompt settlement of actual controversies and establish the legal rights and obligations that will govern the parties' relationship in the future.") In fact, asking a court to declare a contracting party's right to terminate is common. *Cohen v.*

*Orthalliance New Image, Inc.*, 252 F.Supp.2d 761, 767 (N.D. Ind. 2003); *see also Bristol-Myers Squibb Co. v. Ikon Office Solutions, Inc.*, 295 F.3d 680, 683 (7th Cir. 2002) (permitting a declaratory judgment on the questions of whether "the *contract* (1) *allowed for early termination,* and (2) did not give Ikon a right of first refusal" (emphasis added)); BORCHARD, DECLARATORY JUDGMENTS (2d ed. 1941), 558 ("[T]he plaintiff may claim a declaration of his own privilege to terminate, or that some event had terminated the contract, instead of running the risk purporting first to terminate or repudiate and thus expose himself to risk and suit."). Accordingly, the court finds that the instant case has been appropriately brought as a declaratory judgment action.

### ii. Notice and Opportunity to Cure

Section 19 of the Illinois Franchise Disclosure Act provides the following:

> (a) It shall be a violation of this Act for a franchisor to terminate a franchise of a franchised business located in this State prior to the expiration of its term except for "good cause" as provided in subsection (b) or (c) of this Section.
>
> (b) "Good cause" shall include, but not be limited to, the failure of the franchisee to comply with any lawful provisions of the franchise or other agreement and to *cure such default after being given notice thereof and a reasonable opportunity to cure such default, which in no event need be more than 30 days*.
>
> (c) "Good cause" shall include, but without the requirement of notice and an opportunity to cure, situations in which the franchisee:
>
>> (1) makes an assignment for the benefit of creditors or a similar disposition of the assets of the franchise business;
>>
>> (2) voluntarily abandons the franchise business;
>>
>> (3) is convicted of a felony or other crime which substantially impairs the good will associated with the franchisor's trademark, service mark, trade name or commercial symbol; or
>>
>> (4) repeatedly fails to comply with the lawful provisions of the franchise or other agreement.

815 ILCS 705/19 (emphasis added).

Moreover, § 17.2 of the AD Agreement lists 11 defined circumstances in which Tilted Kilt would have the right to terminate the agreement without notice or an opportunity to cure. Defendants maintain that their alleged breach does not fall into any of the 11 aforementioned circumstances. Defendants argue that because Tilted Kilt is asking the court for relief that would violate § 19 of the Illinois Franchise Disclosure Act and § 17.2 of the AD Agreement, Tilted Kilt has not stated a claim for which relief can be granted. Tilted Kilt, in turn, makes two arguments: (1) the court should grant declaratory relief because Defendants' breaches are incurable; and (2) Defendants' breaches fall within the categories listed in the Illinois Franchise Disclosure Agreement and the AD Agreement that allow for termination without notice or an opportunity to cure.

The court is unaware of any authority, either in the Seventh Circuit or Illinois state court, that has addressed whether the Illinois Franchise Disclosure Act's 30-day cure requirement may be obviated if the breach in question is "material" or "incurable."[2] The court notes, though, that the case cited by Tilted Kilt from the District Court of New Jersey stands for the proposition that an incurable breach can provide the basis for immediate termination. *See generally Dunkin' Donuts Franchise Restaurants LLC v. Strategic Venture*, No. 07 C 1923, 2010 WL 4687838 (D. N.J. Nov. 10, 2010). The court also notes that Tilted Kilt has adequately alleged, with supporting authority, that an incurable breach, as has been alleged here, obviates the need for an opportunity to cure in common law. [Resp. in Opp. to Defs. Mot. to Dismiss, pp. 10-13, ECF No. 28.] The court need not decide, at this point, whether the breach alleged by Tilted Kilt was actually material or incurable. *Peoria Partners, LLC v. Mill Grp., Inc.*, No. 15 C 6680, 2015 WL

---

[2] The inverse, of course, is also true. The court is not aware of any authority that would absolutely prevent Tilted Kilt from seeking the relief it is seeking based on a material or incurable breach.

12

8989675, at *4 (N.D. Ill. Dec. 16, 2015) ("Determining whether a breach is material is a fact intensive question that generally is not appropriate for resolution at summary judgment, let alone at the even earlier motion for judgment on the pleadings stage."). It is enough that Tilted Kilt has adequately pled its claim pursuant to Rule 8.

Additionally, Tilted Kilt pleads that it believes a crime has been committed that is injurious to its goodwill. Tilted Kilt has alleged that Defendants have not only violated the AD Agreement, but also the Illinois Franchise Disclosure Act, the Wisconsin Franchise Investment Law, and the Federal Trade Commission's Rule on Franchising by making unlawful financial performance representations to prospective Tilted Kilt Franchisees over a period of years. As a result, Tilted Kilt has alleged both that a crime has been committed and repeated violations of the law and of the AD Agreement, for which good cause without the requirement of notice and opportunity to cure exists, as provided in 815 ILCS 705/19(c)(4). *Dunkin' Donuts, Inc. v. Tejany & Tejany, Inc.*, No. 05 C 4770, 2006 WL 163019, at *3 (N.D. Ill. Jan. 18, 2006). Tilted Kilt has sufficiently pled facts to sustain its claim. Accordingly, Defendants' motion to dismiss is denied.

## C. Defendants' Counterclaim and Complaint

In addition to filing their motion to dismiss, Defendants filed a four-count counterclaim against Tilted Kilt. Despite having filed the counterclaim, Defendants filed a separate lawsuit, alleging the exact same causes of action against Tilted Kilt that are found in their counterclaim. As a result, Tilted Kilt has a filed a motion to dismiss Defendants' counterclaim and Defendants have filed a motion to consolidate. Tilted Kilt does not dispute that the case currently before Judge Tharp is related to the present case. [Resp. to Defs. Mot. to Consolidate, p. 1, ECF No. 19 ("[Defendants] commenced a separate action by filing a complaint that is virtually identical to their counterclaims in this action[.]").] In fact, the complaint before Judge Tharp is duplicative

of the counterclaim filed by Defendants in the instant case.  Therefore, Defendants' motion to consolidate is granted.  Accordingly, Tilted Kilt's motion to dismiss the counterclaim is granted.

## V.     CONCLUSION

For the reasons stated above, Defendants' motion to dismiss [6] is denied.  Further, Tilted Kilt's motion to deny Defendants' counterclaim [22] is granted, and Defendants' motion to consolidate [15] is granted.  Status is set for August 10, 2016 at 11:00 a.m.


Date:   July 29, 2016                                                          /s/

                                                      Joan B. Gottschall
                                                      United States District Judge